The State v. Orwig.

---

THE STATE v. ORWIG.*

1. **Embezzlement:** LARCENY : SUBJECT OF : DRAFT. Under our statute, which abrogates the common law rule, a draft, promissory note or other evidence of debt, is the subject of larceny, and also of embezzlement which is but a similar statutory crime.

The State v. Orwig.

2. —— RULE APPLIED. It was accordingly held that an indictment, which charged that the defendant, as private secretary of the governor, received into his possession and care a treasury draft of the United States, drawn in favor of the State and payable to the order of the governor, which he, the said defendant, feloniously converted to his own use and embezzled, was valid.

3. —— INDORSEMENT NOT NECESSARY. The fact, in such case, that the governor had not indorsed the draft which was payable to his order, or that the amount could not be recovered of the government, no action being maintainable against it, renders the draft none the less an evidence of debt and the subject of larceny or embezzlement.

*Appeal from Polk District Court.*

WEDNESDAY, JANUARY 29.

INDICTMENT for embezzlement founded on section 4244 of the Revision. It contains five counts; their substance (as far as material to be stated) is as follows: Defendant was, on, etc., at, etc., in the employment of William M. Stone, governor of this State, as his private secretary, and as such, being his clerk, servant and agent, by virtue of his said employment, was intrusted with, and received into his possession and under his care, a certain swamp land indemnity draft, dated, etc., and drawn by F. E. Spinner, treasurer of the United States, on the First National bank, Des Moines, Iowa, for the sum of $4,937$\frac{58}{100}$, payable at sight to the governor of the State of Iowa, or order, being U. S. treasury draft No. 3242, and the property of the said State of Iowa, in trust for Decatur county, in said State, and of the value of $4,937.58. A copy of said draft is set out, showing that it was payable at sight to the governor, or order, for Decatur county, for the amount stated, drawn on the First National bank, etc., "issued on requisition," duly registered and signed by the register of the treasury and by the treasurer of the United States. It is then charged that it was the duty of said defendant, as such private secre-

tary, etc., upon receipt of said draft, to forthwith pass over and deliver the same to the treasurer of the State of Iowa, but that he did then and there, in violation of his said duty, without the consent of the said Wm. M. Stone, governor, as aforesaid, his employer, unlawfully, feloniously and fraudulently convert to his own use, and embezzle the said draft, etc. To this indictment defendant demurred upon the ground, in substance, that the property stolen or embezzled was not the subject of larceny; that no right of action could be founded upon it; that it was not a chose in action. Demurrer sustained, and the State appeals.

*Henry O'Connor*, Attorney-General, *M. E. Cutts* and *Polk & Hubbell* for the State.

*Withrow & Wright* for the appellee.

WRIGHT, J. — The statute under which the indictment was found is as follows: If any officer, agent, etc., of any person, etc., embezzle and fraudulently convert to his own use, etc., without the consent of the employer, any money or property of another which has come to his possession or under his care by virtue of his employment, he is guilty of larceny and shall be punished accordingly. Rev. § 4244.

1. EMBEZZLE-MENT: larceny: subject of: draft.

In support of the ruling below, counsel rely upon two cases. The first is *Payne* v. *The People* (6 Johns. 103), in which it was shown that the prisoner was given a letter to read at his request, and which contained information respecting one J. B. C., who was suspected of the crime of murder. He went off with it, and, being pursued, it was taken from him. The charge was for stealing a letter, as "a piece of paper on which a certain letter of information was written of the nature, etc." It was held

that the letter was of no intrinsic value, not importing any property in possession of the person from whom it was taken; that a bond, bill or note was not the subject of larceny at common law; and that they certainly had as much worth in themselves as this letter.   The second is *Rex* v. *Hart* (6 C. & P. 106); which in its statement is very lengthy, but the nature of which, and the point ruled, may be seen by the following language of the court : " It (the instrument charged to be stolen), when taken, was neither a bill of exchange, nor order for the payment of money, but was only in a sort of embryo state, there being the means of making it a bill of exchange." " There was no money mentioned in it, and no parties, and it seems quite impossible that the words written on it by Mr. Ostley (the person charged to have been defrauded), can bring it within either of the counts of the indictment."

Now, if the instrument described in the case before us was " neither a bill of exchange nor order for the payment of money, or if it was a mere " letter of information " not importing any property in the person of the employer, these cases would be in point.   But if it was money or property then it falls within the language of the statute, and is the subject of embezzlement.

The word " property " includes " personal property," and this includes money, goods, chattels, evidences of debt and things in action.   Rev. § 29, cls. 9, 10.   Can any thing be clearer than that this draft was an evidence of debt?

3. —— indorsement not necessary.

Concede that, as the bank had not accepted, it was not liable to pay, and that no action could have been maintained against the government for non-acceptance or non-payment, it would still be true that it would be the evidence of a debt against the government, which was of value to the State.   The indorsement by the governor

would not have increased the liability of the government, nor the obligation of the bank to accept the draft. It was a negotiable instrument as it stood, and the embezzlement after the indorsement would have been no more criminal than a fraudulent conversion before. It is not like a banker's note which had never been put in circulation, for upon such no money could be said to be due or owing (4 Black. Com. 234). Nor again like the case in 2 Leach, 673, where the note was obtained by duress and held not to be available, for, against the validity and binding force of this instrument, no single objection is urged.

Nor again is it the case of a promissory note not used, never issued nor delivered. So long as such a note remained undelivered, and especially if no amount was mentioned in it, it would not be property. Says LITTLETON, J., in *Rex* v. *Hart* (*supra*), the stealing of blank acceptances in a dwelling-house would not support the charge of larceny, for such acceptances are of no value, because not uttered. But it would be very different in the case of the draft before us, which was filled up, alleged to be of the value, etc., and in fact issued and delivered to the defendant in trust, etc.

The abrogation by statute, as has been done in most of the States, of the common law rule, that larceny could not be committed by taking and carrying away a bond, promissory note, or other mere evidence of indebtedness, tends most strongly to show the incorrectness of appellee's theory, and the inapplicability of the cases to which counsel refer. Our statute makes the stealing of a bond, bank note, bill of exchange, or other bill, order, or certificate, larceny (§ 4237). And the language of section 4244, upon which this indictment is founded, sufficiently shows, that embezzlement is but a similar statutory crime, consisting of the misappropriation of money or property

by servants, agents, etc., in whom there is a trust reposed, when, by reason of the trust, the act would not at the common law amount to larceny. 1 Bish. Crim. Law, § 4191.

Or, if defendant had taken and carried away this instrument from the possession of the holder, there could be no question that it would be "property," and the subject of larceny. Whatever would be property under the one statute would be under the other.

The statute defining the word "property" removes all doubt, and all common law authorities as to the meaning of "goods," "chattels," "request," "order," and like terms, are really of but little force or pertinency. Like the act of 7 and 8 Geo. IV. (ch. 29, § 51), which made the stealing of any indenture, deed, bond, note, warrant, order or other security for money, etc., usually termed choses or things in action, a felony, our law includes all these in the words "money and property." The fact that the amount of such draft could not be recovered by action at law against the government makes it none the less an evidence of debt or thing in action. The government cannot be sued it is true, but the draft had nevertheless a value, a value in no manner dependent, so far as relates to the present inquiry, upon this right of action. If it did, and the argument is worth any thing, it would be equally valid if the draft had been embezzeled after its indorsement. For, as a subsisting valid evidence of indebtedness, it was worth as much against the government, represented as much, and was as much property when converted as charged in this indictment, as though the governor had duly indorsed the same prior to that time.

Reversed.